May it please the Court. I am George Crook, Your Honor. I'm here with my colleague Henry Tomasian. We represent the appellant, Appellants. I would ask the Court if I could reserve five minutes for rebuttal argument. Okay, keep your eye on the clock. I shall. May it please the Court. There are four primary errors in the District Court's decision. First of all, the District Court did not recognize, in spite of all the evidence to the contrary, that the District, in this case, did not have a teacher of the child at the IEP meeting. Secondly... Does it have to be a teacher of the child? It does. But that's a term of art. It says general education teacher. I'm sorry? I thought the requirement would be a general education teacher who is or may be responsible for implementation of a part of the child's IEP. That's an issue. But it is a teacher of the child who may be responsible for the implementation of the IEP. It wasn't exactly what happened. No. It was not, Your Honor. It was not a teacher of the child. The District argues, and has nothing on the record to support it, but it argues that, well, the person who was there allegedly filling this role, the vice-principal, would have been responsible for some implementation of the IEP in some way because he's responsible for discipline in the school. And therefore, he may be responsible for the implementation of a portion of the IEP. Fine. But that doesn't make him a teacher of the child. Can you help me understand the use of the maybe? Because that's different than the special education statute. So it says if the child is or may be participating in the regular education environment. So that suggests that the child may not now be participating in the regular education environment. He may not have been a regular education teacher that was teaching him. There may not be one existing. So there would have to be someone in the future. Am I misunderstanding that? No. I don't think so. So we know that, I've forgotten his name, Mr. Block was a regular education teacher in addition to being the vice-principal. He was teaching Spanish or something. He wasn't going to be teaching the next year, but could, I suppose, be teaching again in the future. So I wasn't sure how to deal with the regular education teacher of such a child since it could be someone in the future who was going to teach him. I think that would satisfy the definition. So if Mr. Block was going to teach in some point in the future, that would meet the... I'm sorry, Your Honor, excuse me for interrupting. It would have to be during the IEP year at issue. Okay. So it doesn't say that in the statute. And we know from our case in R.B., the special teacher was six years in the past. So I didn't see that requirement. And then when I look at it with the OSEP interpretation, assuming which both sides seem to assume is the applicable one, then it says it has to be a regular education teacher. And the responsibility there is maybe responsible for implementing a portion of the IEP, which Mr. Block clearly was. So putting those together, I wasn't sure of why there was a specific requirement that Mr. Block didn't meet under the terms of the statute as interpreted by the reg. Your Honor, I'm not at all unfamiliar with the R.B. case, having been the attorney who did it. And in that case, the teacher of the child had taught the child six years before. Now she was the principal of the school the child was attending. The child was going to middle school the following year. And so we argued, well, she can't possibly be a teacher of the child because the child's going to be at a different school. And the Court of Appellation said, well, you know, she could have been sent to the middle school and have been therefore involved in implementing the child's IEP. And she was already a teacher of the child because she had been a teacher of the child's. So did your Honor understand what I tried to say? You look puzzled. Well, so she wasn't going to be known to be teaching the child in the IEP year. So they didn't have any information that she was going to teach the child in the IEP year. So it didn't seem to be a requirement. Well, that was my argument. Well, we're banned by our president. Yes, you are. But the Court said she could have been responsible for part of the IEP the following year because she could have trained schools and been the administrator of a different school. But we don't have that with Mr. Block. Mr. Block, and I wrote a footnote and a reply brief on that, that his assignment was already in place by the time he was testifying and that an administrator cannot be reduced to a classroom teacher unless he or she is given notice officially by March of the preceding year. And that obviously hadn't happened because Mr. Block testified that he was not going to be teaching. So you say that we should read into the statute or we should interpret the statute as requiring that the regular education teacher at least potentially could be a regular education teacher of the child in the IEP year. Is that how you would have us interpret the statute? Yes, Your Honor. And this comes up, the ML case, one of the precedents. There you had a much younger child and it was not clear at all that that child would be in regular education the following year, and if so, how much. And yet, so to answer Your Honor's question, is the first part of it. What do you do with a child who, at least as I understood it, what do you do with a child who is not going to be in regular education, or how do you know? And if you don't know the child's going to be in regular education, what do you do with this requirement? What you do, Your Honor, is you have a regular education teacher there who would be involved, at least maybe, this is the point of the maybe involved, who may be involved in the implementation of the portion of the IEP. Isn't that what Mr. Block was? He was a regular education teacher. Not of the child. And he was going to be responsible for implementing a portion of the IEP. So that's exactly what you said, whereas the of the child, we know it doesn't necessarily have to be of such child because the child may not be participating in the regular education environment. But this kid was going to be. There was no doubt that the ZR was going to be primarily in regular education. The district's IEP so specified. Nobody argued over that. And Mr. Block had not taught him during his eighth grade, which was when the IEP meeting was held, different school systems, etc., etc., and would not be teaching him the following year during the ninth grade and said, I won't be teaching. And if he had been teaching, he would have been teaching Spanish. And there was nothing in the record to indicate that ZR would have been taking Spanish as a ninth grader. Nothing. He had taken Spanish as a seventh grader. He had taken French as an eighth grader. But there was nothing to even suggest he would take Spanish as a ninth grader. Assuming we agree with you that there was a procedural violation, where's the prejudice? You have to still show lack of educational benefit. Sure, Your Honor. The prejudice is this, that had a regular education teacher been there, the regular education teacher could have opined about teaching this child with his history in a regular education class. Teaching a child with this history who had only succeeded on a very small parochial school campus on a large public school campus. Remember the test is that this isn't a contest between Chaminade, a large parochial school, and Oak Park High School, a large public high school. The comparison was with the grammar school, Our Lady of Malibu. And the experience, well not even an experience, a regular education teacher would have had something to say about that. Would have had something to say about how the child would have fit into the program. He could have spoken to the goals. The difficulty I have is that I don't see how Mr. Block wouldn't have done that. He had taught regular education classes. He was the vice principal of the school, or the assistant principal. He would seem to be a very good person to provide that kind of perspective. Why wouldn't he be? We have, well he didn't seem to be at the IEP meeting, your honor. My time just expired. No, you've got about five minutes left. You're in yellow. When it turns red, then you're out of time. You can keep going. I, I, I. You can keep going, answer my question, then you can save the rest for rebuttal. Okay, your honor. Um, Mr. Block was an administrator. He was there as an administrator. All of his comments were comments of an administrator. He talked about class size as an administrator, and said nothing from the point of view of a regular education teacher. So, that's the, that's the answer. He was just clearly an administrator. Okay, you want to save the rest of your time? Thank you. May it please the court, my name is Jennifer Rowe-Gonzalez, and I represent the Oak Park Unified School District. Your honors have hit the nail on the head here. This is R.B. Deja Vu. The counsel for appellant is making the exact same arguments that they made in R.B. related to Mr. Block. And in fact, Mr. Block is analogous in some ways to the principal who attended the IEP team meeting in R.B., and in fact is a step ahead, as you have pointed out, because Mr. Block was indeed, at the time of the IEP team meeting, an actual general education teacher. So, if we look at and apply R.B. to this case, certainly the principal in R.B. had taught the student, but six years prior. At the time of the hearing in R.B., the principal was that. He was a principal. And when we look at the application of the OSEP comments, both from 1999 as well as 2006, which the 2006 comments are not mentioned at all in the briefing by appellants, we see that the Office of Special Education Programming looks not just at whether or not this would be a general education teacher, which Mr. Block indeed was, but whether or not this person could be responsible, not would, but could be responsible for implementation of the IEP, not just in the classroom, but anywhere on the school campus, looking both at academic as well as non-academic activities. And the 2006 comments to the regs by OSEP are very specific about that, and also leave very specifically the choosing of that general education teacher to the school district and the local educational agency. If we follow the logic of appellants here, there are hundreds, if not thousands, of teachers who are general education teachers, as Mr. Block was at the time of the June 14, 2011 IEP team meeting, who would not be able to serve as general education teachers at IEP team meetings. For example, if we look specifically at the case of Z.R., this was his IEP team meeting to transition him from middle to high school. And so at the time that he was transitioning in June, his schedule had not yet been established for the following school year, for 2011-2012. So it's entirely possible that even if the district had chosen, for example, a full-time English teacher, that the teacher who attended that IEP team meeting would not have actually been someone who would have implemented Z.R.'s IEP the following year. What do we do with the language and the regulation of such child, a regular education teacher of such child? It seems a little inconsistent with the then language that if the child may be participating in the regular education environment, but it does seem to say that the regular education teacher has to be teaching such child. What do we do with that language? I don't think that that is, if we look to both the interpretation through the comments as well as the interpretation in case law, that it does have to be someone who would be teaching that child exactly. I think the reasoning behind the wording in this particular portion of the law under 1414 is very distinctly different from special education teacher, which says the special education teacher refers to a special education teacher of the child versus this is a general education teacher of such child. So I think it's designed to be exemplary. So someone, as you pointed out, who may not be in general education at all during this IEP or the implementation of the IEP year, we still need to have a general education teacher at that IEP meeting in order to have a legally constituted IEP team. So that person would be there as a general education teacher of similarly situated children. And that is exactly how this law is interpreted both in the comments to the regulations in 2006 as cited by the district in its briefing, as well as in this court's interpretation. And indeed, that is exactly what happened in RB. RB was a principal. He was not, in that case, the general education teacher was a principal. He was not a general education teacher as Mr. Block was of such a child at the time of the IEP team meeting. And yet this court held in RB that because in consistency with the interpretation of the regulations, he might be responsible for the implementation of perhaps behavior goals, social skills kinds of things at times that were not in class, at unstructured times on a campus, that he was a valid general education teacher of such child. And there are multiple cases where this court has held that. In fact, in ML, where there was no general education teacher at all, the court basically said, give us any general education teacher so that we have someone to meet that requirement under the law. Do you want to address some of the other objections, particularly the goal of reciprocal communication? Yes, I would absolutely like to address that, Your Honor. It's a little bit of an obscure term, but it seems to suggest communications back and forth. Do the goals seem to deal with sort of one-way aspects of the communication? Reciprocal communication does imply communication that's reciprocal, that's back and forth between two people. If we look at the record in this case, the administrative law judge as well as the district court relied very heavily upon an appellant's expert in defining reciprocal communication, and that was Dr. Morrison. And Dr. Morrison relied very, defined reciprocal communication in the record, and this is at SER 73, lines 4 through 10, as well as 74, lines 14 through 17, 75, and 42. In his definition, he said, it is a broad term encompassing a set of pragmatic language skills, which have to do with social skills and speaking to people back and forth. It includes not only initiating and sustaining conversations with others, but also skills such as understanding others' perspectives, intent, and reactions, and responding appropriately when annoyed or frustrated in any conversational or social setting. And that is exactly where Z.R.'s weaknesses were. If we look at the assessment results and what was discussed at the IEP team meeting, he knew how to enter and how to exit a conversation. What he didn't know was how to do things like read other people's intentions and know how to react appropriately, and all of that is part of reciprocal conversation too. If we're having a conversation back and forth with each other, and I say something that's sarcastic and you don't understand that what I'm saying is sarcastic, you might get angry about what I'm saying. You might get angry even if you know it's sarcastic. Yeah, I was going to say, sarcastic doesn't make it better. But the point is that as we have conversations with each other, it's not just about a back and forth. It's about the nuances. And Z.R. at this point had improved his skills drastically. His parents, Sandra Kaler, the family's expert at that June 14, 2011 IEP team meeting talked about how dramatically different his skills were in 2011 than when he had left the district in the middle of fifth grade. And even from the IEP that had been developed in 2010 that specifically had a goal that was about turn taking and going back and forth two or three times in a conversation. At this point in time, these items, interpreting the intentions of peers through their body language, facial expressions, eye contact, responding with age-appropriate behavior and comments, and use of self-management strategies to be able to control yourself while you're in a conversation were what Z.R.'s needs were. Now I understand that these goals were not labeled, as appellants counsel would like, as a reciprocal communication goal. But there is actually no requirement in the law that these goals be labeled at all. And in fact, if we look at case law, which there is none from the Ninth Circuit, but if we look at other... There was a requirement of a reciprocal communication goal, right? Right. And we have a goal that is related to... We have three of them that are related to reciprocal communication. They're not labeled reciprocal communication goals. You're saying they don't have to use the specific word? Absolutely not. As long as they actually are aimed at meeting that goal. Absolutely. And in fact, if you read IEPs, as I do every day, most of the reciprocal communication goals do not have that terminology, reciprocal communication. They're goals that relate to things like eye contact, exchanges of conversation, or as we have here, with being able to appropriately read who you are communicating with and responding appropriately as part of that conversation. That's all part of, as even defined by their own expert, which they say the court did not listen to, as reciprocal communication. There's no question that these goals are part of reciprocal communication. They don't have to be labeled as such to be so. Okay. Thank you. Okay. Moving on to the issue of social skills and the illusory offer, supposedly, of a social skills program to be able to implement these goals for ZR. Appellants have argued that because there was not, at the time of the June 14, 2011 IEP team meeting, actually a social skills program running on Oak Park High School's campus, that then there was no way to show that they could actually implement the IEP. But that is absolutely not what the law requires, and it's not what the case law bears out either. In fact, the case law says that other than proving that you have qualifications of the people, which they don't question Ms. Walker-Shawn's qualifications to implement the social skills program at Oak Park High School, they just question her ability to be able to get the students to participate in that group. The case law says that as long as we're not questioning the qualifications of the people to implement the program, which we're not in this case, that we cannot read into the future the district's ability to implement an IEP, that it's presumed that when the district makes the offer, and they don't question the appropriateness of the number of minutes, it's just whether or not we can put the group together, that then we have the right to be able to implement that IEP. And if it can't be implemented once we actually get into the implementation phase of the IEP, then the family has recourse to then go to due process at that point and to challenge the district's lack of implementation. But you cannot use a crystal ball and reach into the future and say that because there wasn't one right then on that campus, that there couldn't be one in the future. If that was the case, we would have a lot of IEPs that, number one, would be very boring and not individually based because we wouldn't be thinking out of the box about students and doing things that we haven't done before based on students' individual needs. And we also would not be able to develop appropriate IEPs for our students. So I think, again, that argument fails, as does their fourth one, which has to do with Oak Park High School not providing this student with an offer of FAPE. As Mr. Crook mentioned in his opening, they want us to believe that this is a comparison between Our Lady of Malibu, which was a very, very small parochial school with an average class size of between 7 and 12, and Oak Park High School, which absolutely is a much larger school than Our Lady of Malibu was. But that is absolutely not the requirement of the district. The requirement of the district is to provide the student with some educational benefit and the floor of educational opportunity in the least restrictive environment possible. And the least restrictive environment under the law is defined as to the maximum extent appropriate with typically developing and general education peers, as well as in the neighborhood school that is closest to the child's home location. And that is exactly what Oak Park High School is. Secondarily, the family made it very well-known to the district throughout the assessment and the IEP process. They even came in with a letter of parent input that's included as a page in the June 14, 2011 IEP that indicated that what they were looking for was placement at Chaminade. Chaminade, when you lay it on paper... It couldn't be done, right? Yeah, it couldn't be done for multiple reasons. It was not a qualified, non-public school. That's correct. But the district still, and this shows how the district in this case was very cognizant of the parent's right to participate in this process and did not in any way want to seriously infringe, which is the standard when we talk back about Mr. Block. If he's not a general education teacher, then they have to show that that procedural error seriously infringed on the parent's right to participate in the process or denied the student an appropriate education. But if we look here about the request for Chaminade, the district had an obligation to discuss that because that was what the parents wanted and came in asking for, as well as to consider why the parents were asking for it and to respond to those questions in the IEP team meeting. And in fact, that's what the team did. And they spent a considerable amount of time laying side-by-side, including conversation from Mr. Block, because the parents' primary concern was class size, and Mr. Block did contribute to that conversation. His 23 words were... Yes, his 23 words. Really well-chosen words. They were very well-chosen words, but they were specifically... You might, if you see Mr. Block, urge him to become a lawyer. We could use lawyers. Well, and if you knew the other... Use words. If you knew the other players at the table at that IEP team meeting... I think I understand your position. Thank you. All right. If you knew the other players at that IEP team meeting, you would know one of the reasons that Mr. Block didn't say very much is that he was one of the quieter members of that IEP team. And so when many of the parents' concerns came up related to general education, such as they asked some specific questions related to student discipline, whether or not police are called when students are disciplined, the parents were very concerned about those kinds of things. Mr. Buchanan, who is the Once he had answered those questions, there was no need for another IEP team member to answer those questions. Thank you. Thank you. Okay. You have some time left over for a bottle. Thank you, Your Honor. Several things. With respect to the reciprocal communication issue, nobody has mentioned that the district's own assessor admitted that there was not a reciprocal communication goal. Secondly, the... Assuming that's the case, and I'm not sure that is the case, what can be done about that now? What would be the remedy? I'm sorry? Assuming that's the case, that that goal was not met, that it was not specified. Assuming we agree with you on that, what could be done about it now? What is the... Oh, the remedy, Your Honor, is it's a material part of the IEP. It's not there. It was necessary for the child. It was an appropriate... Inappropriate IEP as a result. This case started over the district coming into the Office of Administrative Hearings and filing a case for determination that the Let's say we were to find that it was not appropriate in that one way. What would be the consequence of that? The consequence of that would be that the... Was the IEP as inappropriate, that triggers the family's remedies for compensatory education and reimbursement of expenses that they incurred. The sending of the shamanad? Or was this one... It could be. It could also be Dr. Morrison's cause for a social skills group or any other reasonably... The problem in your case is that you didn't give it a try. It's not like there was an attempt to implement this IEP and it didn't work. They never put him in at all, right? That's correct. So you don't have any other situations where you say, well, look, here's an IEP, here are the failings, the consequences, it didn't work, we now want remedial education or whatnot. They just said, we're picking up our marbles, we're going somewhere else. It's a little hard to say without having... No chance to give him the school to try to put in a social group like they suggested. No chance to implement the IEP to see whether in fact there's any benefit that comes from it? Your Honor, that's done all the time in these cases. The parents will say, this is a defective IEP and we're placing our child in a different setting. He could not have been placed as shamanad, right? Not by the school district, no, Your Honor. Not by the school district. No. Because it was not a certified non-public school. That's correct. It could not have been. But that's not the criteria. I mean, the parents' wishes, and there's ample case law in this, the parents' wishes are not part of the analysis. The question is, was the district's placement appropriate or not? And were the goals and objectives appropriate or not? Just quickly, with respect to the question of can the lack of the general education teacher of the child at the IEP meeting be somehow cured if the person who does show up can speak to the issues, et cetera, the Department of Education has authoritatively said no. And that's in our reply brief at some length. But the citation for that is 64 Federal Register 12, 583, March 12, 1999. They're the people who are going to make sure that the Department asked itself, or the world, well, what about, can other, this is a quote, may other individuals be substituted for the regular education's participation in the IEP meeting, such as a special education teacher who's knowledgeable about the general curriculum, a school counselor who's knowledgeable about the general curriculum, let's paraphrase it, an individual certified as a regular education teacher regardless of whether that individual is currently working with the child. On point, it sounds to me. Answer, resoundingly, no. No. The Department of Education said it's important to point out that the statute specifies that at least one regular education teacher of the child is a member of the IEP team. Therefore, the suggestion of common sense that other individuals could participate in the IEP meeting should not be adopted. Is this cited in your brief? Yes. Okay, we'll find it. Thank you. Thank you, Your Honor. I think I have 50 seconds. I just want to say one short thing. No, you're over a minute. Okay. You're in the red. Well, then I will.
judges: Kozinski, Ikuta, Owens